UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION

**CENTRAL MUTUAL INSURANCE COMPANY,**

    Plaintiff,

v.                                                  CASE NO: 2:22-cv-14058-KMM

**AMERICAN INSURANCE COMPANY,**

    **Defendant**.

_____/

**PLAINTIFF, CENTRAL MUTUAL INSURANCE COMPANY'S,
MOTION FOR FINAL SUMMARY JUDGMENT**

Plaintiff, CENTRAL MUTUAL INSURANCE COMPANY ("CMIC"), pursuant to Rule 56 of the Federal Rules of Civil Procedure, hereby respectfully files this Motion for Final Summary Judgment against Defendant, AMERICAN INSURANCE COMPANY ("ACE"). The grounds for this motion are set forth below.

**OVERVIEW**

In this case, excess insurance carrier CMIC has sued primary carrier ACE for its bad faith refusal to settle an insurance claim for ACE's $2,025,000 policy limits ($2 million in liability coverage and $25,000 in medical payments coverage) when Joseph Baer, the claimant in the underlying suit, offered ACE the opportunity to do so. The claim involved catastrophic injuries that claimant Baer sustained during a serious boating accident. ACE and CMIC's insured James Harris was driving the boat. Under the applicable maritime law providing for joint and several liability, James Harris was responsible for 100% of Joseph Baer's injuries. The policy limits demand by claimant Baer was made a year and a half after the accident and a year after Baer had

filed suit, by which time Baer had undergone multiple surgeries for herniated discs and a total knee replacement. The insured's liability was clear and the damages were self-evidently in excess of ACE's policy limits. ACE's duty to exercise good faith to protect its insured and CMIC as the excess carrier required ACE to accept the incredible gift of the policy limits demand in a case with far greater exposure.

ACE refused to pay its policy limits to settle the claim, instead rejecting the demand by making a counter offer to pay $250,000 on the liability coverage and the $25,000 in medical payments coverage. The opportunity to settle the case for ACE's policy limits was lost, and both the insured and CMIC ended up having to make substantial payments to effect a settlement, which was accomplished for $4 million, with ACE paying $2 million, CMIC paying $1.5 million, and the insured paying $500,000.

In this suit, CMIC seeks recovery of the $1.5 million it was forced to pay to avoid even further exposure because of ACE's bad faith refusal to settle for its policy limits. Because the material facts are not in dispute, CMIC files this motion for summary judgment.

## UNDISPUTED MATERIAL FACTS

*The underlying accident and insurance coverage*

1. On January 30, 2019, James Harris was operating the Harrises' 55-foot vessel outside of a marked channel on the navigable waters of Martin County, Florida when the vessel struck a sandbar at cruise speed causing Joseph Baer ("Baer"), a vessel passenger, to fall down a flight of stairs and suffer catastrophic injuries.

2. At the time of the accident, ACE insured James Harris and Linda Harris under an insurance policy, bearing number Y09752304, that carried two million dollars ($2,000,000.00) in

yacht liability coverage and twenty-five thousand dollars ($25,000.00) in medical payments coverage. [*See* D.E. 29-1 at ¶ 3; D.E. 29-2.]

3. At the time of the accident, CMIC insured James Harris and Linda Harris under a personal umbrella policy, bearing number PXS 4398387, that carried three million dollars ($3,000,000.00) in excess liability coverage, protecting the Harrises above the limits of the ACE Policy. [*See* D.E. 29-1 at ¶ 4; D.E. 29-3.]

4. On July 10, 2019, Baer filed suit against the Harrises in the Circuit Court of the Nineteenth Judicial Circuit in and for Martin County, Florida. [D.E. 29-4.]

5. On April 1, 2020, Brandon Bushway, Esquire ("Bushway"), the insureds' defense counsel, reported his conclusion that "we presently see a basis for liability against Mr. and Mrs. Harris, as owners of the Vessel" and provided ACE with his initial, pre-discovery case valuation of $350,000-$550,000. [D.E. 29-5.] Notwithstanding the foregoing valuation, Bushway recommended, and ACE approved, the filing of a Petition for Limitation of Liability under the Limitation of Liability Act in order to limit the insureds' potential exposure to the post-casualty value of the vessel, $2,149,724.00. [*Id*. at 00161.]

### *Baer's policy limits demand of July 7, 2020*

6. On **July 7, 2020**, Baer provided ACE a time-limited, policy limits demand, offering to settle the matter for the coverage limits under the ACE Policy of two million dollars ($2,000,000.00) together with the no-fault medical payments coverage of twenty-five thousand dollars ($25,000.00). [D.E. 26-6.] Baer's offer to settle the matter against the Harrises for the policy limits available under the ACE Policy would remain open until 5:00 p.m. on July 31, 2020. [*Id*. at 00250.]

3

7. According to Baer's policy limits demand of July 7, 2020, Baer sustained "a concussion, right tibial plateau fracture, right medial meniscal posterior horn oblique tear, right anterior cruciate ligament tear, right posterior cruciate ligament tear, left rotator cuff tear, left biceps tendon injury, four herniated cervical discs at C3-4-5-6-7, and three herniated lumbar discs at L3-4-5-S1" as a result of the accident, which necessitated the following four (4) surgeries:

- an open reduction with internal fixation of the right tibia plateau fracture performed February 12, 2019;
- a left shoulder arthroscopy, subacriomial decompression, bony acromioplasty, distal clavicle excision, rotator cuff debridement and mini-open biceps tenodesis, implanting an Arthrex Birmingham biceps tenodesis kit to secure the biceps tendon performed April 3, 2019;
- a surgical procedure to remove painful hardware from the right knee performed September 10, 2019; and
- a total knee replacement performed June 22, 2020.

[*Id*. at 00247-248.]

8. Baer's policy limits demand of July 7, 2020 set out that, as of the date of the demand, July 7, 2020, Baer's present and future medical expenses were estimated to be **$334,700.30**. [*See id*.]

### *The insured's defense counsel's case valuation of July 15, 2020*

9. On July 15, 2020, Bushway, the insureds' defense counsel, communicated Baer's July 7, 2020 demand to ACE. [D.E. 29-7.] Based upon the medical treatment and medical billing information contained within the demand, Bushway set out his valuation of the case, which significantly increased his initial evaluation as to the exposure in the case:

> In our initial report, without the benefit of any discovery or otherwise receiving any medical records from claimant Joseph Baer, we estimated the exposure in this case to be in the $350,000 to $550,000 range, liability aside. Based on the medical records and bills contained in claimant's demand package, as well as the fact that he has undergone four surgeries—one as recently as June 22, 2020—we see the exposure in this case as significantly greater. ***Based on this new information, and taking everything at face value, we see potential exposure of $1,500,000 to***

> ***$2,000,000 with a "worst case scenario" amount ranging into the multi-millions***, depending on whether a traumatic brain injury claim materializes.
>
> ***
>
> As a brief update on litigation posture, which you may wish to consider for settlement purposes, we just filed our response to Plaintiff's motion to remand the case back to state court, which came as no surprise. We see this back-and-forth as a potential opportunity to consider reasonable settlement. However, it is worth noting that because of this, we still have not conducted any discovery. ***Regardless of the forum, we will be stuck with a jury trial. Jury verdicts with these kinds of injuries, particularly a traumatic brain injury (if a claim for one materializes), could be in the millions.***
>
> ***

[*Id.*]

10. On July 17, 2020, with the policy limits demand pending, Bushway informed ACE that Baer had been hospitalized for complications of internal bleeding due to post-surgical medications. [D.E. 29-8.]

### *ACE's Rejection and Counteroffer of July 31, 2020*

10. On July 31, 2020, ACE tendered the $25,000.00 in medical payments coverage and countered Baer's policy limits demand with an offer of two hundred, fifty thousand dollars ($250,000.00). [D.E. 29-9.]

11. At the time ACE extended the $250,000.00 counteroffer, ACE was aware of the following circumstances:

- Baer had undergone four (4) surgeries since the accident;
- Baer's most recent surgery was performed less than a month earlier;
- Baer's medical treatment was ongoing as to his injuries as well as to complications arising therefrom;
- Medical expenses totaled a minimum amount certain of $284,700.30;
- Medical damages were estimated to be in the range of $334,700.30;
- Defense counsel's policy-limits-range case valuation of $1,500,00.00-$2,000,000.00.

[*See* D.E. 29-6 at 00246-250; D.E. 29-7 at 00183-184; D.E. 29-8 at 00191; D.E. 29-9 at 00518.]

12. ACE's counteroffer of $250,000.00 was less than Baer's known medical expenses of $284,700.30. [*See* D.E. 29-6 at 00246-250; D.E. 29-9 at 00518.]

13. Baer did not respond to ACE's offer of $250,000.00, and ACE made no further attempts to settle this case within the coverage limits of the ACE Policy. [D.E. 29-10.]

*CMIC first notice of the claim and the expired demand, on September 15, 2020*

14. On September 15, 2020, ACE for the first time put CMIC on notice of: (1) the claim, (2) the time-limited demand of July 7, 2020, and (3) ACE's counteroffer of July 31, 2020. [D.E. 29-11.]

15. On October 8, 2020, CMIC, as the excess carrier, told ACE settle the claim within ACE's primary policy's coverage limits. [D.E. 29-12.]

*Baer's Settlement Demand of May 21, 2021*

16. On May 21, 2021, Baer advised of additional surgery on April 26, 2021 for anterior interbody fusions, discectomy and decompression at the C5-C6 and C6-C7, including likely head injury, and provided ACE another opportunity to settle, this time for three million dollars ($3,000,000.00). [D.E.29-14.] This demand was set to expire on June 2, 2021. [*Id*.]

17. On May 25, 2021, Bushway communicated Baer's May 21, 2021 settlement demand to ACE, noting that "the Harrises have significant liability exposure." [D.E. 29-15.]

*ACE's inappropriate response to Baer's settlement demand of May 21, 2021*

18. On May 27, 2021, ACE adjuster, Vivian Harrington, responded to Baer's demand and stated that ACE could "neither accept nor reject [Baer's] demand for the primary policy limits at this time" for the reason that:

> Since the medical records for these recent developments have yet to be disclosed through discovery, it is reasonable for Chubb to request documentation of these medical procedures including the pre-operative recommendations, post-operative reports, a medical opinion regarding the causal relationship with the accident, and

6

>    the opportunity to have these records reviewed by our medical experts before we
>    complete a final analysis of damages.
>
>    . . . Chubb owes a fiduciary duty to Mr. and Mrs. Harris. ***This duty includes
>    ensuring that liability is apportioned fairly based upon the totality of facts, which
>    requires that Hunt Yachts/Hinkley Yacht Services and Garmin participate in the
>    litigation, evaluation, and resolution of Mr. Baer's claim. . . . Since there remains
>    [sic] questions of liability and damages, as set forth in the paragraphs above,
>    Chubb is not in a position to adequately assess Mr. Baer's claim.***

[D.E. 26-16.]

19.     As noted in the Argument section below, maritime law applied to this boating accident that occurred on navigable waters, and substantive maritime law applies the doctrine of joint and several liability such that ACE was incorrect in suggesting that the insured, as driver of the boat that caused the accident, might not be liable for all of the damages sustained by claimant Baer.

### *ACE communications with personal counsel for the insured*

20.     On July 7, 2021, Michael W. Leonard, Esquire ("Leonard"), personal counsel for the insured, formally demanded that ACE:

>    tender its available policy limits to the umbrella carrier to determine, after Ace was
>    afforded multiple prior opportunities to settle this matter, whether the umbrella
>    carrier can get this matter settled. Failing the same, my client demands that you
>    agree to defend, indemnify and hold harmless from any outcome in the above
>    lawsuit, specifically including judgments in excess of the collective policy limits of
>    the Ace policy and the umbrella policy. I am sure you will agree this demand for
>    defense and indemnity appropriately places the risk of an adverse verdict upon the
>    party who is making the decision to take the risk of going to trial. This is especially
>    true since Ace was given multiple opportunities to settle this matter within policy
>    limits.

[D.E. 29-19.]

21.     On July 12, 2021, ACE adjuster, Vivian Harrington, responded to Leonard's July 7, 2021 correspondence and asserted that ACE had been in good faith in its investigation and adjustment of the claim because: **(1)** there were other parties who are responsible for the injuries sustained by Baer who should contribute to settlement, and; **(2)** ACE was providing the insureds

7

with a vigorous defense. [D.E. 29-20.]

22. On July 21, 2021, Leonard replied to ACE's assertion of good faith as follows:

> Respectfully, this is not how one determines whether a carrier is it acting in "good faith". Rather, the inquiry is whether the insurer, in attempting to settle the claim against its insured, under all the circumstances, when it could and should have done so, acted fairly and honestly toward its insured and with due regard for their interests. The focus is on the actions of the insurer – not the action of others.
>
> ***
>
> At the time both settlement offers were made, Ace had sufficient information in which to either settle the claim as to the July 7, 2020 settlement opportunity, and with respect to the May 21, 2021 settlement opportunity, Ace had sufficient information to tender its policy limits towards settlement of the claim. Ace did neither. As such, the inactions of Ace have left my client exposed to damages in excess of its policy limits with Ace and Central Mutual. This is clearly bad faith.

[D.E. 29-21.]

### *ACE's reevaluation and decision to tender coverage limits on July 26, 2021*

23. On July 26, 2021, ACE notified Leonard that ACE "reevaluated the exposure and [is] prepared to tender the $2,000,000 policy limits to Central Insurance towards a global settlement." [D.E. 29-22.]

24. On July 30, 2021, ACE adjuster, Vivian Harrington, confirmed that ACE "has made its limits of $2,000,000 available to Central Insurance towards the global settlement," but advised that ACE would "not be attending the mediation on August 30, [2021]." [D.E. 29-23.]

### *The $4 million settlement of Baer's claim with contributions from the insured and CMIC, and CMIC's initiation of this suit*

25. In September 2021, Baer's claim was settled for four million dollars ($4,000,000.00), with ACE paying two million dollars ($2,000.000.00), CMIC paying one million five thousand dollars ($1,500,000.00) and the insured paying five hundred thousand dollars ($500,000.00). [D.E. 29-24.] CMIC then initiated this suit against ACE to recover the $1,500,000 it had been required

8

to pay to get the case settled in order to eliminate greater exposure because ACE had passed up the opportunity to settle the case within its policy limits in July of 2020 pursuant to Baer's policy limits demand.

## THE AFFIDAVIT AND REPORT OF PLAINTIFF'S BAD FAITH EXPERT

CMIC's bad faith expert, Daniel Doucette ("Doucette"), in his sworn affidavit dated October 13, 2022, opined that ACE failed to appropriately investigate the claim, failed to proactively initiate settlement discussions, and failed to settle the claim when it could and should have settled. [D.E. 32 at 1-2.] Doucette's opinions are based on the underlying facts, as outlined in his report. [D.E. 32-2.] For instance, Doucette noted that ACE's file up to July of 2020 showed very little investigation, and that most of ACE's claim entries focused on the possible liability and fault of other individuals who had been aboard the yacht at the time of the incident. [D.E. 32-2 at 3.] ACE, however, failed to appreciate that the case was governed by maritime/admiralty law. [D.E. 32-2 at 2-3.] Meaning that comparative negligence would not apply because liability under admiralty law is joint and several. [*Id*.] As Doucette recognized, even if Mr. Harris was only 1% at fault, Mr. Harris would be facing responsibility for the entire amount of a jury award. [*Id*.]

Doucette also noted in his report that, by the time of Baer's July 7, 2020 demand, ACE had been informed that Baer had already undergone four surgical procedures: (1) an open reduction with internal fixation of a right tibia plateau fracture on January 12, 2019; (2) a left shoulder arthroscopy and implantation of an Arthrex Birmingham biceps tenodesis kit on April 3, 2019; (3) a procedure to remove surgical hardware in the right knee on September 10, 2019; and (4) a total knee replacement on June 22, 2020. [D.E. 32-2 at 3.] Doucette further pointed out that ACE had notice that Baer's medical bills had totaled $284,000, and that an additional $50,000 would be

9

forthcoming for another total knee replacement. [*Id.*] Doucette additionally noted that the insureds' defense counsel, Bushway, had told ACE on July 15, 2020, weeks before Baer's time limited demand was set to expire, that he valued Baer's claim to be worth $1,500,000-$2,000,000. [*Id.*] Doucette noted that Bushway told ACE that a potential verdict could extend into the millions of dollars if Baer's claim of a brain injury materialized, and advised ACE that the time limited demand was a good opportunity to settle Baer's claim. [*Id.*]

Disregarding the recommendations of Bushway, and ignoring the certainty that the insured Mr. Harris would be fully responsible for the total verdict under maritime law where he was undoubtedly going to be found at least somewhat negligent, ACE offered only $250,000 on July 31, 2020, the date that Baer's demand expired. [*Id.*] As Doucette expressed in his report, ACE's $250,000 offer did not even rise to the amount of Baer's total medical bills. [*Id.*]

ACE did not notify CMIC, as the excess carrier, of the claim until September 15, 2020, and, thereafter, Doucette noted that Baer's damages only continued to increase with additional surgeries and treatment for his traumatic brain injury. [D.E. 32-2 at 4.] Finally, in September 2021, CMIC was forced to step in to have the underlying case resolved with ACE paying its $2 million limits, CMIC paying $1.5 million, and the Harrises paying $500,000. [*Id.*] Accordingly, Doucette opined that a settlement of the July 7, 2020 demand for ACE's policy limits would have protected CMIC, as the excess carrier, as well as the insureds, and that ACE failed to follow the customs and practices of the insurance industry when it failed to settle Baer's claim when it could and should have done so. [D.E. 32-2 at 6.]

**MEMORANDUM OF LAW**

 **A.** **Summary judgment standard**

  Pursuant to Federal Rule of Civil Procedure 56, on motion of a party, the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Further, summary judgment "should be rendered if the pleadings, the discovery, and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

  Once the moving party has discharged its burden, "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotation omitted). The nonmoving party may not rely solely on "conclusory allegations without specific supporting facts." *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985).

  The existence "of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, All U.S. 242, 247-48 (1986). Only facts "that might affect the outcome of the suit under governing law" are material. *Id.* at 248.

  Summary judgment is "an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment serves the important purpose of avoiding "useless and expensive litigation" by "disposing] of factually unsupported claims or defenses." *Volunteer Elec. Coop v. Tennessee Valley Auth.*, 231 F.2d 446 (6th Cir. 1956). Based upon the evidence here,

there is no genuine dispute of material fact as to the issues identified below and CMIC is entitled to a judgment as a matter of law.

**B.     Argument as to why CMIC is entitled to summary judgment**

    **1.     Applicable principles of Florida bad faith law**

CMIC has asserted a claim for common law bad faith against ACE. Under Florida law, an insurer has a duty to act in good faith and with due regard for the interests of its insured. *Boston Old Colony Ins. Co. v. Gutierrez*, 386 So. 2d 783, 785 (Fla. 1980). "An insurer, in handling the defense of claims against its insured, has a duty to use the same degree of care and diligence as a person of ordinary care and prudence should exercise in the management of his own business." *Boston Old Colony*, 386 So. 2d at 785. "The insurer must investigate the facts, give fair consideration to a settlement offer that is not unreasonable under the facts, and settle, if possible, where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so." *Id.* An insurer is also obligated to "advise the insured of settlement opportunities, to advise as to the probable outcome of the litigation, to warn of the possibility of an excess judgment, and to advise the insured of any steps he might take to avoid same." *Id.* "[T]he critical inquiry in a bad faith (action) is whether the insurer diligently, and with the same haste and precision as if were in the insured's shoes, worked on the insured's behalf . . ." *Harvey v. GEICO Gen. Ins. Co.*, 259 So. 3d 1,13 (Fla. 2018).

"[A]n excess insurer is entitled to maintain a common law bad faith action against a primary insurer," and "a primary insurer has the same duty to exercise good faith to an excess insurer as it does to an insured." *Vigilant Ins. Co. v. Continental Cas. Co.*, 33 So. 3d 734, 737 (Fla. 4th DCA 2010) (internal citation omitted). *See also, e.g., RLI Ins. Co. v. Scottsdale Ins. Co.,* 691 So. 2d 1095, 1096 (Fla. 4th DCA 1997) ("It is well settled that an excess insurer is entitled to maintain a

common law bad faith action against a primary insurer."). To determine whether a primary insurer has acted in bad faith, Florida courts consider the "totality of the circumstances," particularly "whether, under all of the circumstances, [the insurer] could and should have settled the claim within the policy limits had it acted fairly and honestly toward its insured [or, by extension, the excess carrier] and with due regard for [its] interests." *Dudash v. S.-Owners Ins. Co.*, No. 8:16-CV-290-T-27AEP, 2017 WL 1598974, at *2 (M.D. Fla. Apr. 28, 2017) (*quoting Berges v. Infinity Ins. Co.*, 896 So. 2d 665, 679 (Fla. 2004). The touchstone for these claims is the insurer's failure to fulfill its obligations of good faith claims handling. The Florida Supreme Court has explained that "[b]ad faith jurisprudence merely holds insurers accountable for failing to fulfill their obligations." *Berges v. Infinity Insurance Co.*, 896 So. 2d 665, 683 (Fla. 2004).

An excess insurer may also recover for a breach of this duty on behalf of its common insured on a theory of equitable subrogation. *Perera v. U.S. FId. & Guar. Co.*, 35 So. 3d 893, 900 (Fla. 2010). Recovery under equitable subrogation is proper when the excess insurer "paid money that it should not have been required to pay, absent the primary insurer's bad faith." *Vigilant Ins. Co. v. Cont'l Cas. Co.*, 33 So. 3d 734, 738 (Fla. 4th DCA 2010). "When, as a consequence of the bad faith conduct of the primary insurer, the insured or its excess insurance company pays a judgment or settlement against the insured in an amount exceeding the primary limits, it has been damaged." 31B Fla. Jur 2d Insurance § 3376 (*citing Vigilant Ins. Co. v. Continental Cas. Co.*, 33 So. 3d 734 (Fla. 4th DCA 2010)). *McNamara v. Gov't Emps. Ins. Co.*, 30 F. 4th 1055, 1057, 1063 (11th Cir. 2022) ("final judgment that exceeds all available insurance coverage—regardless of whether it results from a consensual settlement or a jury verdict—constitutes an 'excess judgment' that can satisfy the causation element of an insurer-bad-faith claim under Florida law."); *Potter v. Progressive Am. Ins. Co.*, No. 21-11134, 2022 WL 2525721, at *1 (11th Cir. July 7, 2022)

(settlement followed by a final judgment that could legally qualify as an excess judgment).

### 2. Application of the principles to this case

The short version of the bedrock principles of Florida bad faith law is: "The insurer must investigate the facts, give fair consideration to a settlement offer that is not unreasonable under the facts, and settle, if possible, where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so." *Boston Old Colony*, 386 So. 2d at 785.

ACE thus had an obligation here to investigate and evaluate two aspects of claimant Baer's claims against the insured James Harris arising from the January 30, 2019 accident - liability and damages. The undisputed facts show that ACE did not do either prior to rejecting the demand for the ACE policy limits made a ***year and a half*** after the accident, and ***a full year*** after Baer had files suit against ACE's insured James Harris.

As to liability, ACE should have determined from the very beginning that the insured, as driver of the boat, had at least some degree of fault for this boating accident in navigable waters, described in the Complaint as follows:

> Mr. Harris drove [his] 55-foot vessel…while Mr. Baer was a passenger, out of the marked channel, running it aground at cruising speed, causing Mr. Baer to fall down a flight of stairs and sustaining catastrophic injuries.

[D.E. 1-2, p 2]. Under the substantive federal maritime law, "plaintiffs may obtain judgment for the full amount [of their damages] from any and all joint tortfeasors under the doctrine of joint and several liability." *Groff v. Chandris, Inc*., 835 F. Supp. 1408, 1409 (S.D. Fla. 1993) (citing *Edmonds v. Compagnie Generale Transatlantique,* 443 U.S. 256, 99 S.Ct. 2753, 61 L.Ed.2d 521 (1979) (1979); *Ebanks v. Great Lakes Dredge & Dock Co*., 688 F. 2d 716 (11th Cir. 1982). Because James Harris had at a minimum some degree of fault for the accident, he was liable to claimant Baer for *all* of Baer's damages under the applicable doctrine of joint and several liability.

ACE clearly did not take its insured's liability for all damages into account in evaluating the case. As long as almost a year after ACE had failed to accept the July 7, 2020 policy limits demand, its adjuster was contending in a May 2021 letter, cited above, that the liability of other potential tortfeasors should be taken into account in evaluating the claim against ACA's insured. ACE was flat wrong in that regard, as it should have known from the beginning.

As far as damages, the July 7, 2020 policy limits demand letter outlined the extensive surgeries that Baer had undergone, including for *seven herniated discs* and a *full knee replacement.* Medical damages were estimated to be in the range of $334,700.30 at that time, without even taking into account future medical expenses and a suspected traumatic brain injury. Even the defense counsel retained by ACE said, in his July 15, 2020 letter, *while the policy limits demand was still open*: "Based on this new information, and taking everything at face value, we see potential exposure of $1,500,000 to $2,000,000 with a "worst case scenario" amount ranging into the multi-millions, depending on whether a traumatic brain injury claim materializes." [D.E. 29-7.]

Clearly, the demand for the $2 million in liability coverage and $25,000 in medical payments coverage should have been accepted by ACE had it been acting with due regard for the interests of the insured and of CMIC, and the exposure it was creating for them if ACE rejected the insured's entirely reasonable demand. Again, as the Supreme Court has held, an insurer should consider a settlement offer that is not unreasonable under the facts, and settle, if possible, where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so." *Boston Old Colony*, 386 So. 2d at 785. The total recovery ended up being $4 million, and ACE could have entirely averted that by paying the policy limits demand of $2,025,000.

Because of ACE's failure to fulfill its obligations of good faith claims handling, CMIC

incurred an obligation to pay money that it would not otherwise have been required to pay. CMIC is entitled to summary judgment on its bad faith claim against ACE.

## CONCLUSION

Plaintiff Central Mutual Insurance Company respectfully submits that its motion for summary judgment should be granted. Judgment should be entered against Defendant Ace American Insurance Company for the $1,500,000.00 payment made by CMIC on the insureds' behalf and for the attorney's fees and costs CMIC has incurred in prosecuting this action. Plaintiff further asks the Court to award such other and further relief as the Court may deem appropriate and just.

Respectfully Submitted,

*/s/ Jay B. Green*
JAY B. GREEN, ESQ.
Fla. Bar No. 213268

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed with the Clerk of Court using the CM/ECF system, which will electronically send notification to counsel of record, on this 15th day of October, 2022.

GREEN, MATZNER & KELLNER, P.A.
*Counsel for Plaintiff*
1200 North Federal Highway, Suite 301
Boca Raton, FL 33432
Primary:      jgreen@gaflaw.com
Secondary:    bashlock@gaflaw.com
              pleadings@gaflaw.com

Telephone:    (561) 347-2400
Facsimile:    (561) 955-9555

By: */s/ Jay B. Green*
        JAY B. GREEN
        Fla. Bar No. 213268